## Pennsylvania Labor Relations Board et al. v. Camino

*Vincent R. Smith,* for complainants.

*John W. Steen,* for respondent.

McWHERTER, LAIRD, JJ., March 17, 1943.—This case arises on an appeal by respondent from an order

entered against him by the Pennsylvania Labor Relations Board. The order requires respondent to place three employes upon a preferred list for reinstatement to their former positions, and to pay the employes back wages in the amount of $1,334.59. Respondent owned and operated several school buses used in conveying school children in Rostraver Township, Westmoreland County, Pa. The complaint was filed by the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 872, in behalf of three former employes of respondent, Louis Camino. The order of the board was based on 55 findings of fact and six conclusions of law arrived at by the board which were supposedly based on testimony taken at various hearings before an examiner.

It appears from the findings of fact that Louis Camino had three employes engaged as bus drivers for a number of years. Those employes, about two years prior to the subject matter of the complaint, joined the complainant union. For the next two years no difficulties arose between the parties hereto, although respondent knew that his employes had joined the union.

At the beginning of the school year in September 1939, the employes, through their union representative, requested an increase in wages which respondent refused to pay, offering in turn a smaller increase. The contract proposed by the union was left with respondent. One week later, on September 19, 1939, respondent, the employes, and the union representative met, resolved all their difficulties and orally agreed on a wage scale of $50 every two weeks (findings of fact no. 18). The following day, September 20, 1939, the union representative returned to respondent with a contract for signature which respondent refused to sign until he was given an opportunity to present it to his attorney. The union representative was willing that respondent exhibit the proposed written contract

to a lawyer provided it was done immediately and provided that he, the representative, be present. Respondent did not refuse to sign the contract but was unwilling to sign it without first consulting his lawyer. Thereupon the union representative immediately called respondent's three employes out on strike and respondent was under the necessity of employing three new men to man his buses for the next day's work, to wit, September 21, 1939.

A large part of the testimony is taken up with the conversations between and the activities of the several parties after September 20, 1939. For the reasons hereinafter stated this matter can and should be decided on what transpired up to and including September 20, 1939.

The sole and only question before the board or before this court was and is whether respondent was guilty of unfair labor practice by violating section 6, subsec. 1, clauses (a), (b), (c), (d), or (e) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.6, prior to the calling of the strike on September 20, 1939.

The board arrived at the conclusion that respondent had violated clauses (a), (c), and (e), above referred to, which clauses read as follows:

"(1) It shall be an unfair labor practice for an employer—

"(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act. . . .

"(c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this act, or in any agreement approved or prescribed thereunder, or in any other statute of this Commonwealth, shall preclude an employer from making an agreement with a labor organization (not established, maintained or assisted by any action defined in this act as an un-

fair labor practice) to require, as a condition of employment, membership therein, if such labor organization is the representative of the employes, as provided in section seven (a) of this act, in the appropriate collective bargaining unit covered by such agreement when made and if such labor organization does not deny membership in its organization to a person or persons who are employes of the employer at the time of the making of such agreement, provided such employe was not employed in violation of any previously existing agreement with said labor organization. . . .

"(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act."

The fourth, fifth, and sixth conclusions of law arrived at by the board read as follows:

"4. That Louis Camino has restrained, coerced and otherwise interfered with his employes in the exercise of their right of self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid and protection within the meaning of section 6, subsec. 1, clause (a), of the Pennsylvania Labor Relations Act.

"5. That Louis Camino has discriminated against his employes, and more particularly Voss Theakston, Carl Theakston and Robert Igoe, in regard to hire, tenure, terms and conditions of employment, for the purpose of discouraging membership in a labor organization known as the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 872, within the meaning of section 6, subsec. 1, clause (c), of the Pennsylvania Labor Relations Act.

"6. That Louis Camino upon request has refused to bargain collectively with the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers

of America, Local No. 872, the known representative of his employes, within the meaning of section 6, subsec. 1, clause (e), of the Pennsylvania Labor Relations Act."

It is to be noted that the board did not find in the fourth, fifth, and sixth conclusions that respondent was guilty of violating clauses (a), (c), and (e) before the calling of the strike on September 20, 1939. There is no finding of fact on the part of the board which would support a conclusion that there had been such violation before the calling of the strike on September 20, 1939, neither is there any testimony in the record to support a conclusion that respondent was guilty of a violation of any of these three sections prior to the calling of the strike.

We have carefully examined not only the record but the testimony. What transpired between the union's representative and respondent on the evening of September 20, 1939, is quite important. There was ample testimony to justify the board in finding as a fact that the strike was called while negotiations were still on between the parties, while a verbal contract was in force between the parties, at a time when the employer was still willing to continue the negotiations and effect a written contract. There was ample testimony to justify a finding of fact that the business representative of the union capriciously and arbitrarily called a strike because the employer did not then and there sign the proposed written contract without the advice of his counsel, the union representative apparently acting under the erroneous conclusion that negotiations ceased unless respondent signed the contract immediately that evening. No such findings of fact were arrived at by the board. Under the circumstances respondent was justified in hiring and placing new men on his buses on the morning of September 21, 1939, after the strike had been called under the circumstances above set forth.

In the case of National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U. S. 333, 345, the United States Supreme Court said:

"Nor was it an unfair labor practice to replace the striking employes with others in an effort to carry on the business. Although §13 [of the act, 29 U. S. C., sec. 163] provides, 'Nothing in this Act shall be construed so as to interfere with or impede or diminish in any way the right to strike,' it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers. And he is not bound to discharge those hired to fill the places of strikers, upon the election of the latter to resume their employment, in order to create places for them. The assurance by respondent to those who accepted employment during the strike that if they so desired their places might be permanent was not an unfair labor practice nor was it such to reinstate only so many of the strikers as there were vacant places to be filled."

In the instant case, neither the testimony nor the findings of fact in any way indicate that respondent violated the Pennsylvania Labor Relations Act prior to the time that he hired new employes to fill the places of the strikers.

The Supreme Court, in a later case, National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 296, said:

"The Board's order is without support unless the date of the refusal to bargain collectively be fixed as July 23, 1935. The evidence and findings leave no doubt that later, in September, respondent ignored the Union's request for collective bargaining, but as at that time repondent's factory had been reopened and was operating with a full complement of production employees, the refusal to bargain could afford no basis for an order by the Board directing, as of that date,

the discharge of new employees and their replacement by strikers."

In the light of the above decision, we have carefully examined the findings of fact of the Pennsylvania Labor Relations Board and the testimony and cannot find any refusal on the part of respondent to bargain with his employes prior to the calling of the strike the evening of September 20, 1939. On the contrary, respondent had bargained with his employes and their representative, and finally on September 19, 1939, reached an agreement which was accepted by all parties (findings of fact no. 18).

The evidence and the findings set forth events which occurred later in October 1939, which show that respondent finally refused to bargain any further with the complainants. But at that time respondent's business was in full operation with new employes and, in the words of the Supreme Court, "the refusal to bargain could afford no basis for an order by the Board directing, as of that date, the discharge of new employees and their replacement by strikers."

The instant case and its facts appear to be directly within the law as laid down by the United States Supreme Court in the case of National Labor Relations Board v. Sands Manufacturing Co., 306 U. S. 332, 344:

"There is no suggestion that there was a refusal to bargain on August 21st. . . . Respondent rightly understood that the men were irrevocably committed not to work in accordance with their contract. It was at liberty to treat them as having severed their relations with the company because of their breach and to consummate their separation from the company's employ by hiring others to take their places. The Act does not prohibit an effective discharge for repudiation by the employe of his agreement, any more than it prohibits such discharge for a tort committed against the

employer. As the respondent had lawfully secured others to fill the places of the former employes and recognized a new union . . . the old union . . . were no longer in a position on September 4th to demand collective bargaining on behalf of the company's employes."

Respondent on September 19, 1939, had reached an acceptable agreement with his employes and when, on the following day, they went on strike because he would not immediately, without benefit of legal advice, execute a written agreement, respondent was at liberty to treat them as having severed their relations with him and to consummate their separation by hiring others to take their places. As the Supreme Court says: Neither the National Labor Act nor the Pennsylvania Labor Act "prohibits an effective discharge for repudiation by the employe of his agreement."

The employes in the instant case were adequately protected by their oral agreement of September 19th and we cannot find any theory of equity or justice which would hold that it would be unfair labor practice for the employer to demand benefit of legal advice prior to executing a written contract. We are aware of the decisions holding that it is a violation of the Labor Act for an employer to refuse to execute a written contract, but none of these decisions goes so far as to hold that the employer should not first be given a reasonable opportunity to consult with legal counsel. It is, therefore, the opinion of the court that the employes in the instant case severed their relationship voluntarily with their employer prior to any violation of the Labor Act on his part.

In the case of Hazel-Atlas Glass Co. v. National Labor Relations Board, 127 F. (2d) 109, 118, the court held:

"The strike of the six operators was illegal and would have constituted sufficient justification for their discharge."

We think as a matter of law, under the facts and testimony of the instant case, that the strike was illegal and that respondent would have been justified in discharging his employes for their refusal to work prior to his being given a reasonable opportunity to consult his attorney.

The Federal court, following the above-quoted decisions, in Great Southern Trucking Co. v. National Labor Relations Board, 127 F. (2d) 180, 185, said:

"And an employer not guilty of conduct denounced by the Act has the right to protect and continue its business by employing new men for jobs left by strikers so that an employer would not later be bound to displace men hired to take the strikers' places in order to provide positions for the strikers."

In an opinion and decree dated January 15, 1943, this court referred the case back to the Pennsylvania Labor Relations Board with directions to find additional facts as to whether defendant was or was not guilty of unfair labor practices prior to the evening of September 20, 1939, when the strike was called, and to add to or modify its conclusions of law in accordance with such additional findings. On February 18, 1943, the board complied with this order by arriving at additional findings of fact numbered 56, 57, 58, 59 and 60.

Finding 56 sets forth certain quotations from the testimony, all of which occurred prior to September 20, 1939. Additional finding 57 sets forth that the acts described in finding 57 were not the immediate or proximate cause of the strike. Additional finding 58 consists of excerpts from the testimony as to the conversation between the parties on the evening of September 20, 1939, when the union representative presented the proposed written contract which defendant refused to sign without first showing the same to his lawyer and having the benefit of his counsel's advice regarding the same.

Additional finding 59 is to the effect that defendant was not acting in good faith in stating that he wished to show the contract to his lawyer but that the same was an "excuse or alibi". There is nothing in the record to indicate that the request for an opportunity to show the same to his counsel was not made in good faith. This is the mere assertion unsupported by the testimony.

After the reference back, the board arrived at an additional conclusion of law—no. 7, wherein the board finds that the immediate, proximate, and sole cause of the strike was an unfair labor practice committed by Louis Camino on September 20, 1939, in "interfering with, restraining or coercing his employes in the exercise of the rights guaranteed in the Pennsylvania Labor Relations Act by refusing to bargain collectively," prior to the calling of the strike on the night of the same day.

We agree with the board that the strike would probably not have been called had defendant signed the contract on the evening of September 20, 1939. We do not agree with the board that the refusal to sign the contract without advice of counsel on the evening of September 20, 1939, was an unfair labor practice within the meaning of the act.

The reference back to the Labor Board has resulted in boiling this case down so that the board has apparently founded its decision on what occurred on the evening of September 20, 1939, when the written contract was presented to defendant. The testimony as to what occurred prior to September 19, 1939, in conversations between the parties could not justly be made the basis for the complaint in that the parties had verbally agreed on September 19, 1939, to a wage scale of $50 each two weeks. It can thus be seen that the decision of the board could not be based on any conduct prior to that date.

Reference back has resulted in practically removing from consideration the testimony as to what occurred prior to September 20, 1939, and what occurred thereafter as a basis for supporting the complaint. The board has said what occurred on the evening of September 20, 1939, was the immediate, proximate, and sole cause of the strike called that evening. On the evening of September 20, 1939, defendant did not absolutely refuse to sign the written contract offered him by the union representative. He refused to sign the same until he had the advice of counsel. This act, in our opinion, does not constitute an unfair labor practice on his part. The union representative was entirely unjustified in immediately calling defendant's employes out on strike the same evening without giving defendant the opportunity to consult with his counsel. Had the labor representative not been so precipitate in calling the strike and not been so equally precipitate in filing his complaint it can be reasonably assumed that the contract as presented or a corrected form thereof would have been signed within a few days, and there would have been no strike, and this complaint would never have been filed.

We are, therefore, of the opinion that the conclusions of law numbered 4, 5, 6, and 7 are unsupported by legal, substantial, and competent testimony. It follows that the order and decision of the board must be set aside. The authority of the court to act in the present instance is set forth in section 9 of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211.9, which provides as follows:

". . . the court . . . shall have power . . . to make and enter . . . a decree enforcing, modifying . . . or setting aside, in whole or in part, the order of the board."

In Spungin's Appeal, 32 D. & C. 611, Judge Fox of Dauphin County reversed an order of the Pennsylvania Labor Relations Board directing the employer to desist

from interfering, etc., and directing reinstatement of certain employes discharged by the employer.

We therefore enter the following

### Decree

Now, March 17, 1943, after argument, and upon due and careful consideration, a majority of the court concurring, it is ordered, adjudged and decreed that the appeal of respondent be and the same is hereby sustained and the decision and order of the Pennsylvania Labor Relations Board be and the same is hereby set aside and reversed and judgment is entered for respondent with costs. An exception is noted and a bill sealed for complainants.